O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFONSO G. VALENZUELA,** | ) NO. CV 12-0754-MAN |
| **Plaintiff,** | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| **CAROLYN W. COLVIN,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

Plaintiff filed a Complaint on February 1, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On March 6, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on October 18, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further

---

[1]   Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On October 30, 2009, plaintiff filed an application for SSI, alleging an inability to work since January 1, 2009, due to paranoia, schizophrenia, diabetes, neuropathy, and right hand injury. (Administrative Record ("A.R.") 38, 99-101, 125.)

The Commissioner denied plaintiff's claim initially, and upon reconsideration. (A.R. 48-52, 57-62.) On May 3, 2011, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law James L. Moser (the "ALJ"). (A.R. 35-45.) Medical expert David Peterson and vocational expert Sandra Trost also testified. (*Id.*) On May 13, 2011, the ALJ denied plaintiff's claim. (A.R. 18-34.) The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. (A.R. 1-6.) That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff had not engaged in substantial gainful activity since October 30, 2009, the date his SSI application was filed. (A.R. 23.) The ALJ determined that plaintiff has the severe impairments of: diabetes mellitus type II, chronic pancreatitis, and arthritis of the hands, but he does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (A.R. 23, 26.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "less than the full range of light work." (A.R. 26.) Specifically, plaintiff can:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. Furthermore, he is limited to occasional handling and fingering with the right hand.

(*Id.*)

The ALJ found that plaintiff had no past relevant work. (A.R. 28.) However, based upon plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in the national economy that plaintiff could perform, including "flagger," "counter clerk," and "bakery work[er] convey[or] line." (A.R. 29.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since October 30, 2009, the date he filed his SSI application. (*Id.*)

///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following two issues:  (1) whether the ALJ properly determined that plaintiff can engage in other work; and (2) whether the ALJ properly considered plaintiff's testimony.  (Joint Stipulation ("Joint Stip.") at 4.)

**I.   The ALJ Properly Relied On The Vocational Expert's Testimony In Finding That Plaintiff Can Engage In "Other" Work.**

Plaintiff contends that the ALJ's determination that plaintiff could perform "other work" is not supported by substantial evidence, because the jobs identified by the vocational expert do not exist in "significant numbers."  (Joint Stip. at 4-8.)

At step five of the sequential evaluation, the burden shifts from the claimant to the ALJ to show that, based on the claimant's RFC, age, education, and past work experience, the claimant is able to perform

other work that exists in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 20 C.F.R. § 416.960(b)(3). The ALJ can meet his burden at step five by either taking the testimony of a vocational expert or by referring to the Grids. *See* Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006); *see also* Tackett, 180 F.3d at 1101(describing how the vocational expert's testimony and the Grids are used at step five). If the ALJ chooses, as in this case, to rely upon the testimony of a vocational expert, the hypothetical posed to the vocational expert must be "accurate, detailed, and supported by the medical record." *Id.* If the hypothetical presented to the vocational expert reflects all of the claimant's limitations and is supported by substantial evidence, the ALJ may rely on the vocational expert's response. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). A vocational expert's recognized expertise provides the necessary foundation for his or her testimony. *Id.* at 1218. No additional foundation is required. *Id.*

At the administrative hearing, the vocational expert ("VE") testified that a person having the limitations[2] identified by the ALJ

---

[2] The ALJ asked the VE to assume a hypothetical individual with the following limitations:

> This person can occasionally lift and/or carry with the use of both hands a maximum of 20 pounds. But the same person can frequently, and this is, of course, as a hypothetical person, lift and/or carry, including upward pulling, up to ten pounds. The person can stand and/or walk with normal breaks for about six hours in an eight-hour day and can sit with normal breaks for about six hours in an eight-hour day. Push and pull is unlimited, except for -- it's completely unlimited, push and pull. As far as climbing ramps and stairs, ladders, ropes and scaffolds, can only be done occasionally. He can only occasionally balance. He can only occasionally stoop, kneel, crouch or crawl. And as far as manipulative limitations, he

could perform jobs existing in significant numbers in the local and national economy. (A.R. 42-43.) Specifically, the VE responded that the hypothetical person could perform:

> [At t]he light exertional level, with an SVP: 2, he could be a flagger assistant, essentially a one-handed job. DOT code number 372.667-022, local jobs are 3,560 and nationally 681,530. At the light SVP: 2, he could be a counter clerk, 249.366-010. This only needs occasional use of the hands. Locally 6,180 and nationally 176,400. He could also be a bakery worker conveyor line, which is a light SVP: 2; it's occasional use of the hands. The local jobs are 9,000, I mean, 978 and nationally 11,655.

(A.R. 43.) Plaintiff's counsel never challenged the job numbers the vocational expert presented, never inquired about the sources of her job numbers, never made any argument to the ALJ about the reliability of those numbers, and never presented other jobs data. (A.R. 44.) Indeed, although plaintiff's counsel had the opportunity to do so, he did not cross-examine the vocational expert. (*Id.*)

After the ALJ issued his adverse decision, plaintiff submitted additional vocational evidence to the Appeals Council. (*See* A.R. 172-

---

can reach in all directions, including overhead, but he is limited in occasionally handling and fingering with his right hand. He's limited as to gross manipulation and handling and fine manipulation in fingering. And that's the right hand only.

(A.R. 43.)

79.) Specifically, plaintiff submitted reports from "Job Browser Pro," a software program that compiles and analyzes job statistics. (*Id.*) According to the information contained in these reports, there were significantly fewer "flagger," "counter clerk," and "bakery worker" jobs available in the local and national economy than the vocational expert claimed. (*Id.*) After considering the additional evidence submitted by plaintiff, the Appeals Council denied review, noting that the evidence did not provide a basis for changing the ALJ's decision. (A.R. 1-6.)

In view of the data from Job Browser Pro, and as noted *supra*, plaintiff contends that the ALJ erred in relying on the vocational expert's testimony that there was a significant number of jobs in the economy which plaintiff could perform. This argument is rejected for the following reasons:

First, the ALJ was entitled to rely on the vocational expert's testimony regarding the number of jobs in the economy. *See* 20 C.F.R. § 416.966(e)(authorizing the ALJs to rely on vocational expert's testimony to determine occupational issues); Bayliss, 427 F.3d at 1217-18 (upholding ALJ's reliance on vocational expert's testimony regarding job numbers). Further, the vocational expert's testimony amounts to substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001)(testimony of a vocational expert constitutes substantial evidence). Contrary to plaintiff's contention, neither the ALJ nor the vocational expert was required to identify the methodology used to determine the jobs plaintiff can perform. Rather, the vocational expert's expertise alone was a sufficient foundation. *Id.* at 1218 (finding that a "[vocational expert]'s recognized expertise provides the

necessary foundation for his or her testimony," and thus, "no additional foundation is required"). Accordingly, the ALJ's reliance on the vocational expert's testimony that there were a significant number of jobs in the economy was supported by substantial evidence.

Second, plaintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the vocational expert's opinion, which the ALJ adopted at step five. As an initial matter, the data presented by plaintiff was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context. In fact, Job Browser Pro is not included in the list of published sources recognized as authoritative by the Social Security regulations. *See* 20 C.F.R. § 416.966(d). Further, while plaintiff identifies several decisions in which courts have acknowledged that a vocational expert's testimony that relies on Job Browser Pro data can constitute substantial evidence, none hold that a vocational expert must rely on it or that this source controls when it conflicts with the vocational expert's testimony.[3]

---

[3] *See, e.g.,* Poisson v. Astrue, 2012 U.S. Dist. LEXIS 43147, 2012 WL 1067661, at *9 (D. Me. March 28, 2012)(holding that a vocational expert's testimony was reliable when she relied on Job Browser Pro as well as her own professional experience and expertise in endorsing the job numbers provided), report and recommendation adopted, 2012 U.S. Dist. LEXIS 57351, 2012 WL 1416669 (D. Me. Apr. 24, 2012); Cole v. Astrue, 2011 U.S. Dist. LEXIS 129272, 2011 WL 5358557, at *26 (D. Or. June 7, 2011)(vocational expert testimony based, in part, on information obtained from "Skill Trend by Job Browser" was "reliable" evidence of the number of jobs available in the national economy which plaintiff could perform), report and recommendation adopted, 2011 U.S. Dist. LEXIS 128012, 2011 WL 5358550 (D. Or. Nov. 4, 2011); Pitts v. Astrue, 2011 U.S. Dist. LEXIS 69186, 2011 WL 2553340, at *6 (N.D. Ohio May 19, 2011)(ALJ properly relied on vocational expert's testimony regarding number of jobs available when vocational expert relied, in part, on information provided by Job Browser Pro program), report and recommendation adopted 2011 U.S. Dist. LEXIS 69185, 2011 WL 2553311

Third, assuming *arguendo* that the data from Job Browser Pro constitutes substantial evidence, the data, at best, would support an alternative finding regarding the number of job available for plaintiff in the economy. The Ninth Circuit has held that "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Moreover, when the record contains ambiguous or conflicting evidence, the Administration is responsible for resolving the conflict. *See* Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). As such, the ALJ's decision should be upheld.

Fourth, plaintiff's counsel utterly failed to challenge the vocational expert's job numbers, inquire about the methodology used to derive those numbers, or present competent evidence regarding other jobs data at the administrative hearing. Rather, plaintiff waited until *after* the ALJ's adverse decision to submit alternative jobs data to the Appeals Council. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorazo v. Astrue, 2012 U.S. Dist. LEXIS 4059, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)(rejecting plaintiff's contention that "apparent conflicts" existed

---

(N.D. Ohio June 28, 2011); Drossman v. Astrue, 2011 U.S. Dist. LEXIS 109921, 2011 WL 4496568, at *7-*8 (N.D. Ohio July 15, 2011)(ALJ properly relied on vocational expert's opinion regarding job availability rather than plaintiff's post-hearing submission of conflicting statistical information from Job Browser Pro program), report and recommendation adopted, 2011 U.S. Dist. LEXIS 109922, 2011 WL 4496561 (N.D. Ohio Sept. 27, 2011).

between the vocational expert's testimony and the Dictionary of Occupational Titles when plaintiff's counsel failed to question the vocational expert at the hearing about any alleged conflicts or request the ALJ do so). Further, plaintiff's counsel has not explained why he did not proffer the Jobs Browser Pro data, which presumably was available at the time of the hearing, to the ALJ rather than waiting to submit it to the Appeals Counsel, which, in effect, invited the alleged error now at issue.

Accordingly, for these reasons, this Court finds no reversible error and upholds the Appeals Council decision[4] notwithstanding the conflict between the vocational expert's testimony and the vocational evidence submitted by plaintiff to the Appeals Council.[5]

///
///
///

---

[4] Courts in this district consistently have reached the same conclusion on this issue. See, *e.g.*, Engrave v. Colvin, 2013 U.S. Dist. LEXIS 55146, 2013 WL 1661754 (C.D. Cal. April 17, 2013)(United States Magistrate Judge Jacqueline Chooljian); Gonzales v. Colvin, 2013 U.S. Dist. LEXIS 53777, 2013 WL 1614937 (C.D. Cal. April 15, 2013)(United States Magistrate Judge Patrick J. Walsh); McCaleb v. Colvin, 2013 U.S. Dit. LEXIS 3757, 2013 WL 1516259 (C.D. Cal. April 12, 2013)(United States Magistrate Judge John E. McDermott); Newsome v. Colvin, 2013 U.S. Dist. LEXIS 38779, 2013 WL 800699 (C.D. Cal. Mar. 4, 2013)(United States Magistrate Judge Arthur Nakazato); Gardner v. Colvin, 2013 U.S. Dist. LEXIS 28907, 2013 WL 781984 (C.D. Cal. Mar. 1, 2013)(United States Magistrate Judge Marc Goldman); Bradley v. Astrue, 2012 U.S. Dist. LEXIS 167522, 2012 WL 5902349 (C.D. Cal. Nov. 26, 2012)(United States Magistrate Judge Charles F. Eick).

[5] The Court need not and does not determine whether, if the vocational evidence submitted by plaintiff controlled over the testimony of the vocational expert, the numbers of jobs reflected in plaintiff's evidence would constitute "significant numbers" of jobs. *See generally* Beltran v. Astrue, 700 F.3d 389 (9th Cir. 2012).

11

## II. **The ALJ Set Forth Clear And Convincing Reasons For Finding Plaintiff's Testimony Regarding His Subjective Symptoms And Pain To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to consider in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas, 278 F.3d at 958-59; see also 20 C.F.R. § 416.929(c).

Here, the ALJ found that, "[a]fter careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 27.) Further, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ concluded that plaintiff's "statements concerning

12

the intensity, persistence and limiting effects of [his] symptoms are not credible" to the extent they varied from the ALJ's own RFC assessment. (*Id.*) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to his subjective symptom and pain testimony must be "clear and convincing."

During the May 3, 2011 hearing, plaintiff testified that he is unable to work, because he gets "tired real fast," is "constantly in pain," and cannot bend three fingers on his right hand. (A.R. 38-39.) He testified that he experiences constant pain, particularly in his legs. (A.R. 39.) Plaintiff asserts that he always uses a cane, because his left knee "buckles up." (*Id.*) He also testified that he is unable to work, because sometimes he hears voices, he has attempted suicide, and he is unable to get along with people. (A.R. 40.) He testified that he last used drugs, specifically cocaine, in July 2010. (*Id.*)

In his November 28, 2009 "Function Report," plaintiff reported that he can walk 50 feet before he needs to rest. (A.R. 133, 137.) He noted that he has difficulty putting on his pants, because lifting his legs causes a lot of pain. (A.R. 133.) He is able to travel independently, shop for groceries, prepare his own meals daily, iron, wash his laundry, and play piano every other day, but he needs help with his house cleaning and yard work, because it causes pain in his legs and shortness of breath, and because he gets very tired. (A.R. 134-35.)

The ALJ rejected plaintiff's subjective complaints, because: (1) the objective evidence did not support plaintiff's allegations of pain or other limitations; (2) plaintiff's statements regarding his daily

activities were inconsistent with his subjective complaints; and (3) plaintiff's statements regarding his drug use were inconsistent. (A.R. 28.) The reasons stated by the ALJ are legally sufficient reasons for declining to credit plaintiff's statements.

First, the ALJ noted that plaintiff's alleged limitations were out of proportion to the objective clinical findings and his observed functional restrictions. (A.R. 28.) The ALJ cited consultative examiner Dr. John Sedgh's March 5, 2010 evaluation of plaintiff, which did not reflect that plaintiff's impairments were as severe as plaintiff alleges. (A.R. 27.) As noted by the ALJ, despite plaintiff's complaints that the pain in his lower extremities renders him unable to walk more than 50 feet, Dr. Sedgh observed that plaintiff had normal motor strength in all extremities and exhibited a normal gait without the use of any assistive device. (A.R. 27, 335-36.) Dr. Sedgh also opined that plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour day with normal breaks; and sit for six hours in an eight-hour day, although his kneeling, crouching, and stooping should be limited to occasionally. (A.R. 336.) Dr. Sedgh further opined that repetitive fine or gross manipulations with the right hand should be limited to occasional such manipulations. (*Id.*) A subsequent "Physical Residual Functional Capacity Assessment" based on Dr. Sedgh's records, as well as plaintiff's medical records, was performed by a non-examining state physician on March 12, 2010, and it generally confirmed Dr. Sedgh's findings, noting, in particular, that plaintiff's functional allegations were "partially credible." (A.R. 27-28, 346.) An ALJ may consider a physician's opinion that plaintiff could work, which contradicts

plaintiff's assertion to the contrary, in determining credibility. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995). Although a lack of medical evidence cannot form the sole basis for discounting plaintiff's pain testimony, it is a factor that the ALJ can consider in his credibility analysis.[6] Burch, 400 F.3d at 681.

Next, the ALJ noted that plaintiff made "several inconsistent statements with regard to his history of drug abuse," thus detracting from his credibility.[7] (A.R. 28.) The medical records indicate that on December 29, 2009, plaintiff reported he had been using alcohol and cocaine two days ago. (A.R. 282.) One month later, on January 25, 2010, plaintiff reported that he had been recovering alcoholic for one year and was not using drugs. (A.R. 416.) Four days later, on January 29, 2010, plaintiff reported he used crystal methamphetamine three days ago, smoked cocaine yesterday, and drinks two 24 ounce beers per day. (A.R. 427.) On March 9, 2010, plaintiff reported that he recently stopped using alcohol and methamphetamine and had stopped using "crack 3 months ago." (A.R. 429, 435.) On April 5, 2010, plaintiff reported

---

[6] To the extent the ALJ rejects plaintiff's subjective complaints based on the fact that plaintiff's medical treatment appears to be limited and conservative, it is not a convincing reason to reject plaintiff's credibility. (A.R. 27.) While it is permissible for an ALJ to evaluate the credibility of a claimant's subjective limitations based, in part, on plaintiff's record of receiving minimal and conservative treatment, he must make detailed findings of fact so that a reviewing court may determine whether substantial evidence supports the ALJ's conclusion. The ALJ failed to meet his burden here. *See* Fair v. Bowen, 885 F.2d at 597, 601-02 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 634-635 (9th Cir. 1981). Further, there is no substantial evidence in the record to support the ALJ's belief that more aggressive treatment would alleviate plaintiff's symptoms significantly.

[7] The record reflects that plaintiff has had a long history of alcohol and drug use, including a February 26, 2009 "treatment for a burnt throat after the screen from his crack pipe fell off." (A.R. 25.)

he "drinks minimal alcohol" and "no crystal meth for six months." (A.R. 439.) On May 5, 2010, plaintiff denied drug use within the last three months; however, the physician reported that plaintiff had a "positive U-tox for amphetamines, [and] cocaine." (A.R. 361, 446.) Thus, as the ALJ can use ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996), this was a clear and convincing reason for discounting plaintiff's testimony.

Finally, while the ALJ may look at plaintiff's daily activities as a basis for determining whether plaintiff can perform certain work, the ALJ fails to explain how plaintiff's ability to "travel independently, spend time with family, shop in stores, prepare meals, iron and wash clothes, and even play the piano at a professional level," translates into the ability to perform full-time work. *See* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); Smolen, 80 F.3d at 1283 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Thus, without more, this is not a clear and convincing reason for discrediting plaintiff's subjective symptom testimony.

The Court finds, however, that the ALJ's error in relying on this third reason was harmless, because the ALJ's two other reasons and ultimate credibility determination are supported by substantial evidence. *See* Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008)(holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence). The Court therefore finds and concludes that reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's testimony.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

DATED: May 23, 2013

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE